[Civ. No. 2185.    Third Appellate District.—January 17, 1921.]

## L. W. NELSON, Petitioner, v. ANDERSON–COTTONWOOD IRRIGATION DISTRICT et al., Respondents.

[1] IRRIGATION DISTRICTS—CONSTRUCTION OF CANALS—LACK OF FUNDS —MANDAMUS.—Before the appellate court can issue a writ of mandate requiring an irrigation district to immediately undertake the construction of canals, ditches, and laterals authorized by the voters of the district, it must be shown that funds of the district are available for such work.

[2] ID.—LIMITATION OF RIGHT TO WATER—BENEFICIAL USE.—While section 18 of the Wright irrigation law provides that each land owner in a district is entitled to have water apportioned to him upon the ratio which the last assessment upon the land of such owner bears to the whole sum assessed upon the district, the right of a land owner to any quantity of water is limited always to its beneficial use.

[3] ID.—MANDAMUS—NECESSITY FOR SPECIFIC DEMAND.—Before a writ of mandate should issue, it must appear that a specific demand has been made by the petitioner for that to which he is entitled, in order that the one upon whom the demand is made may have opportunity to comply.

[4] ID.—DELIVERY OF WATER—MANDAMUS—ESSENTIAL AVERMENTS.— Before a writ of mandate can properly issue to compel an irrigation district to deliver to a land owner the quantity of water ap-

portioned to him under the irrigation laws relating to the district, it must be first made to appear that the petitioner is prepared to use the same, that demand has been made therefor, that the water is available, and that compliance with such demand or request has been refused.

PROCEEDING in Mandamus to compel an irrigation district to construct a canal lateral. Writ denied.

The facts are stated in the opinion of the court.

Roscoe J. Anderson and Cornish & Moore for Petitioner.

Carr & Kennedy for Respondents.

PLUMMER, P. J., *pro tem.*—This is an original application for writ of mandate wherein the petitioner seeks an order of this court directing such writ to issue, commanding the respondents forthwith to proceed with the construction of, and speedily complete, a certain canal lateral known as number 3-1-2; and also to deliver to the petitioner, upon lands belonging to him, eleven second-feet of water. The petitioner is the owner of land situate in the Anderson-Cottonwood Irrigation District, an irrigation district formed for irrigating lands lying along the banks of the Sacramento River, principally in the county of Shasta. The lands belonging to the petitioner comprise about 1050 acres, divided into two tracts, designated as tract "A" and tract "B," tract "B" being served by a ditch or canal, designated as lateral 3-1. Tract "A" is not susceptible of irrigation from this lateral; and before said tract can be irrigated with any degree of success, lateral 3-1-2 must be completed. Upon the hearing hereof, the whole matter was referred to the Honorable James W. Bartlett, as sole referee, to take testimony and submit findings. Upon the return of the findings of the referee, it being made to appear to the court that some additional testimony should be taken and findings made thereon, a second reference was ordered. In accordance with the orders of this court, such testimony was taken and findings made and returned, and the matter is now before the court upon the motion of the respondents for judgment upon the findings, and upon the motion of the

petitioner to set aside the findings of the referee, and that findings be made by the court upon the testimony.

The testimony taken before the referee covered a wide range of inquiry, including the capacity of the ditches belonging to the district, the character of the soil composing the lands belonging to the petitioner, its adaptability to the growing of different crops, the uses of water, and the quantity supplied during the years 1918 and 1919 and a portion of the year 1920. While the testimony taken and returned by the referee covers a wide range of inquiry, the questions tendered for decision by this court involve only the issue as to whether this court should make any order directing the construction of lateral 3–1–2; the amount of water to which the petitioner is entitled, and whether sufficient grounds have been laid to authorize the issuance of a writ of mandate herein directing that such quantity be furnished to the petitioner. As to these matters we have carefully examined the testimony and the findings of the referee, and are of the opinion that the findings of the referee touching these matters are amply supported by the evidence.

It appears from finding 10 of the referee that the construction of lateral designated as 3–1–2 has always been included as a part of the plan for the construction of laterals within the defendant irrigation district; that funds have twice been provided by bond issues for the construction of necessary irrigation canals, the acquiring of water rights and the building of reservoirs, but that the funds so provided were exhausted in the construction of the proposed works of the district before reaching said lateral; that the expenses of constructing the works exceeded the estimates, and that the proposed works of the district were not completed according to the plans and specifications by reason of the lack of funds available for such purposes. It also further appears from the findings that during the month of May, 1920, an additional bond issue was authorized by the voters of the district in the sum of $200,000; that the works included in the plans and specifications for which such bond issue has been authorized include lateral 3–1–2. It does not appear that any of these bonds have been issued or sold, or that any money is immediately available for the present construction of said lateral; but it does appear

from the finding referred to that the trustees of the defendant district are taking the necessary legal steps for the purpose of obtaining money that can be used in its construction.

[1] By finding 16 it appears that there is no money available, and cannot be made available, for the immediate construction of lateral 3–1–2, under the law authorizing an assessment of two per cent of the aggregate value of the lands within the district, as provided by chapter 291 of the statutes of the state of California enacted in 1919; and that the amount of money in said fund so created does not exceed the aggregate of the duly authorized and issued warrants of said Irrigation district. As to when any of the funds of the district can be used for construction purposes, and what steps must be taken to authorize such use, have been discussed by this court in *Buschman et al.* v. *Turlock Irr. Dist.*, 47 Cal. App. 321, [190 Pac. 491], and need not here be repeated. And until these funds are available for the construction of the canals, ditches, and laterals authorized by the voters of the district, it is evident that this court can issue no mandate requiring the immediate undertaking of such work. It will be presumed that the directors of the district will expend the money for the purposes for which it has been raised, and the fact that the directors of the district were not able to complete the construction of the lateral referred to out of the moneys raised as the proceeds of prior bond issues does not authorize the issuance of the writ of mandate. It must be first shown that the money is available before its application can be directed. We do not deem it necessary to cite authorities upon this point.

[2] By the petition for writ of mandate herein it is insisted that the petitioner is entitled to eleven second-feet of water. The testimony taken before the referee, and the findings made thereon by him, as amended by the additional testimony and additional findings, show that the district has an inchoate right to 400 second-feet of the waters of the Sacramento River for irrigation purposes; that the capacity of the main canal through which water is taken from the Sacramento River, as now constructed, is limited to about 278 second-feet of water. It further appears from the testimony and the findings that the last

assessment assessed upon the lands of said Anderson-Cottonwood Irrigation District amounted to the sum of $1,561,803.22, and that the amount of the assessment upon the lands belonging to the petitioner situate within said district was the sum of $43,500. Under the provisions of section 18 of the Wright irrigation law (as amended, Stats. 1897, p. 259), each land owner is entitled to have apportioned to him water upon the ratio which the last assessment upon the land of such owner bears to the whole sum assessed upon the district. At the time the petition was filed herein, the capacity of the canal referred to was limited to 230.94 second-feet, which gave the petitioner at that time a right to 6.43 second-feet. Upon the same calculation, according to the provisions of said section, the capacity of the canal, as improved during the pendency of these proceedings to carry 278 second-feet, would entitle the petitioner herein to 7.738 second-feet.

The right of the land owner to any quantity of water, however, under the irrigation laws pertaining to a district, is limited always to its beneficial use. In other words, under section 18, a land owner has a right to the beneficial use of that portion of the water available for use in the district calculated according to the ratio provided by section 18, or, if not prepared to use that water himself, he may assign his right to anyone who is so prepared. It does not mean, as we construe the section, that any land owner is entitled to have so much water delivered to him and then permit the same to run to waste. Considerable testimony was introduced touching the fitness of the land belonging to the plaintiff for profitable rice culture. We do not deem it necessary to go into this question further than to state that beneficial use of water upon lands, and the possibility of the land owner making a profit upon the crops raised by means of irrigation upon his lands, are not one and the same thing. In other words, the fact that a land owner may not be able to make a profit off of any particular crop does not limit his right to use his proportionate share of the water of the district, to pay for which he has been assessed in making the effort.

Section 15c of the Wright irrigation law (added by Stats. 1917, p. 758), authorized the directors of an irrigation district to adopt rules and regulations governing the

distribution of water. In accordance with this section, the directors of the respondent district have adopted a set of rules, and by section 8 of the rules so adopted it is provided, among other things, that land owners must keep their ditches and facilities for conveying and distributing water in good condition, so that the water may be used without undue loss or waste of time; that the land must be leveled and prepared so that water can be distributed without waste.

The evidence shows and finding 21 of the referee, among other things, sets forth the fact that tract "A" of the land belonging to the petitioner was not in a condition for irrigation; that it had not been leveled or prepared for irrigation purposes; that at the time of the institution of these proceedings, about forty acres of tract "B" had been planted to rice by the petitioner's tenants, and about 140 acres more of said lands were partially prepared for the planting of rice; and that all of the lands situate in tract "B" which were prepared for the planting of rice for the season of 1920 lie under, and are susceptible of irrigation from, lateral 3–1 as already constructed; that the amount of water required to economically irrigate the lands planted to rice in tract "B" would not exceed one miner's inch per acre for each acre of land so planted; that the respondents were ready, able, and willing to supply petitioner such an amount of water for irrigation of lands in tract "B" as could be distributed without waste, as provided by rule 8 regulating the distribution of water in said district.

There is no finding as to the exact quantity of water delivered by the district to the petitioner, nor can it be satisfactorily ascertained from the testimony just exactly what quantity of water was delivered; but it does appear that considerably less than 6.43 second-feet of water were being delivered at the time of the institution of this action, and it would also seem that less than 7.738 second-feet were being delivered at any time during the course of these proceedings. This, however, does not alter the situation by reason of the findings to which we have referred, which appear to be supported by the testimony that the respondents were able and willing to deliver at all times the quantity of water of which the petitioner and his tenants were prepared to make beneficial use.

Assuming that the petitioner, by reason of the capacity of the ditches already constructed belonging to the district, and the proportion which the last assessment upon his lands bears to the whole amount of the last assessment levied upon the district, is entitled to 7.738 second-feet of water when prepared to use the same, or if prepared to use the same, it does not follow that the writ should issue herein by reason of another matter now to be considered.

[3] The law seems to be well settled that before a writ of mandate should issue, it must appear that a specific demand has been made by the petitioner for that to which he is entitled, in order that the one upon whom the demand is made may have opportunity to comply. The only demand made by the petitioner herein, so far as disclosed by the testimony and the findings, is as follows: "Anderson Cottonwood Irrigation District. Application for water. Season of 1920. Crops as follows: Alfalfa, blank acres; orchard, blank acres; corn, blank acres; beans, blank acres; garden, blank acres; rice, 1100 acres. All to be applied to 300 more or less. Remarks: Section 3, Township 30, N. R. 4 W., and Sec. 34, T. 31 N. R. 4 W. Plains East of Sac. River. L. W. Nelson."

This application is in no sense of the word a specific and direct demand for any particular number of second-feet of water, nor does it constitute any showing on the part of petitioner that he is ready and able to make a beneficial use of any particular quantity.

In *Price* v. *Riverside Land & Irr. Co.*, 56 Cal. 431, the court had before it this identical question, and it there held: "It is, however, an imperative rule that before making an application for a writ of *mandamus*, an express demand or request must be made on the defendant to perform the act sought to be enforced by the writ; and the demand should be definite and specific." In that case it was held that the petitioner had not demanded any specific quantity of water before filing his application for a writ of mandate. [4] Hence, admitting that the petitioner, under the conditions as they now exist in the Anderson-Cottonwood Irrigation District, would be entitled, if prepared to make beneficial use thereof, to 7.738 second-feet of water before a writ of mandate could properly issue from this court, it must be first made to appear that the petitioner is pre-

pared to use the same, that demand has been made therefor, that the water is available, and that compliance with such demand or request has been refused. We do not find anything in the testimony showing this state of facts, nor are there any findings by the referee establishing the same.

It necessarily follows that whether all of the findings of the referee are or are not supported by the testimony, the petitioner is not entitled to the issuance of a writ of mandate herein. It is therefore ordered that the petition for a writ of mandate herein be, and the same is hereby, denied, and that the respondents have and recover their costs incurred in this proceeding.

Hart, J., and Burnett, J., concurred.